UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUMMER GARDNER,

       Plaintiff,

  v.

DETROIT ENTERTAINMENT, LLC,
d/b/a MOTORCITY CASINO,
a Michigan limited liability company,

       Defendant.
_____/

Case No. 12-14870
HON. TERRENCE G. BERG

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DKT. 25)**

In this case, a former casino employee claims that she was fired in violation of the Family Medical Leave Act ("FMLA"). Plaintiff Summer Gardner ("Plaintiff") is a former employee of Defendant Detroit Entertainment, LLC d/b/a Motorcity Casino ("Defendant"). Plaintiff claims Defendant interfered with her FMLA benefits by denying those to which she was entitled.

Defendant now moves for summary (Dkt. 25), Plaintiff has responded (Dkt. 29), and Defendant replied (Dkt. 31). On June 23, 2014, the Court heard oral argument on Defendant's motion. For the reasons set forth below, Defendant's motion for summary judgment is **DENIED**.

## I.   BACKGROUND

At the outset, the Court notes Defendant did not follow the Court's practice guidelines in its motion for summary judgment. The Court's practice guidelines for

motions for summary judgment are available on the Court's website[1] and provide as follows:

> A Rule 56 motion must begin with a "Statement of Material Facts." Such a Statement is to be included as the first section of the Rule 56 Motion. The Statement must consist of separately numbered paragraphs briefly describing the material facts underlying the motion, sufficient to support judgment. Proffered facts must be supported with citations to the pleadings, interrogatories, admissions, depositions, affidavits, or documentary exhibits. Citations should contain page and line references, as appropriate.... The Statement of Material Facts counts against the page limit for the brief. No separate narrative facts section shall be permitted.

The response to a Rule 56 Motion must begin with a "Counter-statement of Material Facts" stating which facts are admitted and which are contested. The paragraph numbering must correspond to moving party's Statement of Material Facts. If any of the moving party's proffered facts are contested, the non-moving party must explain the basis for the factual disagreement, referencing and citing record evidence. Any proffered fact in the movant's Statement of Material Facts that is not specifically contested will, for the purpose of the motion, be deemed admitted. In similar form, the counter-statement may also include additional facts, disputed or undisputed, that require a denial of the motion.

Defendant's motion for summary judgment did not comply with the Court's practice guidelines, as it did not provide an enumerated list of "Material Facts," with specific citations to the record. Rather, Defendant's brief contains a narrative fact section, which is expressly prohibited by the Court's practice guidelines.

Consequently, Plaintiff's response brief could not offer a "Counter-statement" to Defendants' motion. Without such competing statements of material facts, it is

---

[1] http://www.mied.uscourts.gov/PDFFIles/BergPracticeGuidelines.pdf

difficult to discern which facts are, and are not, subject to dispute. Both counsel are advised that failure to follow the Court's practice guidelines in the future will result in their pleadings being stricken from the record. In any event, the Court conducted a very thorough review of the parties' briefs, oral arguments, and exhibits and gleaned the following facts, which are viewed in a light most favorable to the Plaintiff as the non-moving party.

Plaintiff began working for MotorCity Casino on November 8, 1999 (Dkt. 29, Ex. B, Gardner Dep., p. 17). In June, 2004, Plaintiff first sought FMLA protected leave (Dkt. 29, Ex. C, ¶ 6). Throughout the following seven years, Plaintiff was on and off intermittent medical leave for various reasons. *Id.* The first period of intermittent leave related to Plaintiff's *current* medical condition began in June 2006 (Dkt. 29, Ex. C, ¶ 7). At that time, Plaintiff was approved for intermittent FMLA leave related to a degenerative spinal disorder (Dkt. 29, Ex. B, Gardner Dep., p. 27). This disorder left Plaintiff unable to work after working on her feet for several days in a row (Dkt. 29, Ex. C, ¶ 5). Between June 2006 and July 2011, Plaintiff was approved for periods of intermittent leave related to this disorder seven separate times (Dkt. 29, Ex. C, ¶ 7; Dkt. 29, Ex. E).

The specific period of intermittent FMLA leave at issue in this case began on July 1, 2011 (Dkt. 1, ¶ 8; Dkt. 29, Ex. E). During the first ten years of Plaintiff's employment, Defendant processed FMLA leave requests internally through its Human Resources Department (Dkt. 25, p. 2). However, beginning in October of 2009, Defendant retained a third party administrator, FMLASource, to process

FMLA leave requests. *Id.* Plaintiff contends that she informed FMLASource she wished to be communicated with by postal mail regarding FMLA-related communications (Dkt. 29, Ex C, Gardner Decl., at ¶¶10-12). The relevance of this fact becomes apparent below. During the time between November 2009 and December 2011, Plaintiff received numerous letters from FMLASource through postal mail (Dkt. 29, Ex. E).

In October 2011, Defendant and FMLASource became aware that Plaintiff had been absent on intermittent FMLA leave nine times in September 2011, five more than anticipated by her doctor, and that she also had called off work every Sunday in September 2011 (Dkt. 25, Ex. G, Sue Depo. at 15; Ex. E, Cluff Depo. at 48). Accordingly, on October 7, 2011 FMLASource sent a letter *via email* to Plaintiff, requesting that her health care professional re-certify the basis for her leave by October 25, 2011 (Dkt. 25, Ex. L, Recertification Email). Whether this email constituted sufficient notice to Plaintiff is a central issue to this case. Plaintiff contends that she did not open, and therefore did not effectively receive the October 7, 2011 email, in time to respond by the October 25, 2011 deadline. Again, prior to this critical email, Plaintiff contends that FMLASource communicated with her regularly through postal mail (Dkt. 29, Ex. E).

Not having opened this email, Plaintiff did not submit the recertification paperwork by October 25, 2011. FMLASource then automatically generated another letter on October 27, 2011, and sent it to Plaintiff again by email, advising her that due to the lack of recertification documentation, her intermittent leave was now

4

only approved from July 1, 2011 to October 6, 2011, and that her leave request for the period from October 7, 2011 to December 12, 2011 was denied (Dkt. 25, Ex. J; Ex. M).

Defendant thus contends that any absences after October 6, 2011 occurred outside of the protections afforded by the FMLA, and became subject to the normal consequences of Defendant's attendance policy (Dkt. 25, Ex. M; Ex. J). Before this time, Plaintiff had accumulated 3.5 attendance points, for non-FMLA-protected absences which occurred on July 15, 2011, August 6, 2011 and September 17, 2011 (Dkt. 25, Ex. O; Ex. P, Gardner Depo. at 33-34). In addition to those unprotected absences, Plaintiff had also been absent on October 22, 23, 28, 29 and November 2, 2011, which she had designated as covered by her intermittent FMLA leave (Dkt. 25, Ex. Q; Ex. P, Gardner Depo. at 45). According to Defendant, Plaintiff's failure to provide timely recertification from her health care professional of the basis for her leave meant that those absences were not FMLA-protected.

On November 4, 2011, Leticia McCall, Defendant's Human Resources staff member who handled FMLA leave requests, informed Crystal Deault in Defendant's "Slot Department" that, because Plaintiff's intermittent FMLA leave request for the period of October 7 to December 12, 2011 had been denied, any absences during that period were now subject to Defendant's attendance policy (Dkt. 25, Ex. R). Treating all of Plaintiff's absences as unexcused under Defendant's attendance policy resulted in an accumulation of 8.5 attendance violation points between July

5

15, 2011 and November 2, 2011, subjecting Plaintiff to termination.[2] Defendant decided to terminate Plaintiff's employment.

Plaintiff called FMLASource on November 7, 2011 and spoke with Customer Service Specialist Adriana Sue. Ms. Sue memorialized the conversation in a log entitled "Notes for Summer Gardner" either during or immediately after the conversation (Dkt. 25, Ex. G, Sue Depo. at 24). The log entry for November 7, 2011 provides in pertinent part:

> Employee stated that she was told by her employer that Intermittent Leave recertification was denied. Employee stated that she did not know that recertification was opened. Advised employee recertification was opened because she used 9 absences in September and is only certified for 4 episodes per month and she reported time off for every Sunday in September. Employee stated that she never received paperwork. Advised employee paperwork was sent to email provided in demographic information and correspondence settings were set to email only. Employee stated that when she opened claim, she authorized "email only" knowing that she was expecting something but has not been checking email so did not know recertification paperwork was sent. Advised employee that she gave permission for email only so that's how paperwork was sent. Updated setting to postal and email.

(Dkt. 25, Ex. H). Plaintiff disputes that she ever authorized FMLASource to send correspondence to her via "email only" (Dkt. 29, Ex. C ¶ 10) ("At no time did I inform anyone at FMLASource that I should be communicated with by 'email only,' because I do not use email very often").

Plaintiff appealed the denial of her leave to FMLASource and submitted a statement in support of the appeal (Dkt. 25, Ex. S). Plaintiff also submitted the required paperwork from her doctor, on November 23, 2011 (Dkt. 29, Ex. J). Upon

---

[2] Under Defendant's attendance policy for hourly workers such as Plaintiff, an accumulation of seven attendance points in a 180-day period is grounds for termination (Dkt. 25, Ex. C).

receipt of the required paperwork from Plaintiff's doctor, FMLASource *approved* Plaintiff's FMLA leave, but only from November 22 to December 12, 2011. *Id.* Defendant, and FMLASource, upheld the denial of Plaintiff's FMLA leave between October 7 and November 21, 2011. Thus, Plaintiff's appeal was denied, and the termination of her employment was final. *Id.*

Plaintiff then brought this lawsuit.

## II. ANALYSIS

### A. *The Standard For Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. Proc. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the

7

evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

### B. *The Family Medical Leave Act*

The Family Medical Leave Act ("FMLA") entitles eligible employees "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C § 2601. In this case, Plaintiff sought leave for medical reasons. An employee is eligible for FLMA-protected medical leave when the "employee's own serious health condition makes the employee unable to perform the functions or his or her job." *See* 29 C.F.R. § 825.100(a) (2013). In order to provide eligible employees with unfettered access to protected leave, the FMLA makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act]," or to "discharge or in any other manner discriminate

8

against any individual for opposing any practice made unlawful by [the Act]." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 281 (6th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)-(2)).

The Sixth Circuit has recognized two theories of recovery under the FMLA: (1) the interference or entitlement theory arising from § 2615(a)(1), and (2) the retaliation or discrimination theory arising from § 2615(a)(2). *Seeger*, 681 F.3d at 882. The interference theory stems from the FMLA's creation of substantive rights, while the retaliation theory considers whether an employer took an adverse action for a prohibited reason. *Id.* Under the interference theory, an employee may recover from an employer when a violation occurs, regardless of the employer's intent. *Id.* Conversely, under the retaliation theory, "the employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Id.* (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)) (original emphasis).

Plaintiff's Complaint appears to raise both an FMLA interference claim and a retaliation claim (Dkt. 1, ¶ 20 – "Defendant willfully violated the FMLA by interfering with Plaintiff's attempt to take FMLA leave and/or retaliating against Plaintiff for her exercise of her rights under the FMLA"). However, the parties summary judgment briefs appear to focus solely on an FMLA interference claim.[3]

---

[3] FMLA retaliation claims are evaluated according to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendant's motion for summary judgment does not discuss the *McDonnell Douglas* burden-shifting analysis. Thus, to the extent that Plaintiff's Complaint raises an FMLA retaliation claim, this claim also survives summary judgment.

9

### C. *Plaintiff's FMLA Interference Claim*

To prevail on an FMLA interference claim, Plaintiff must establish five things: (1) that she was an eligible employee, (2) that Defendant was an employer as defined under the FMLA, (3) that Plaintiff was entitled to leave under the FMLA, (4) that Plaintiff gave the employer notice of her intention to take leave, and (5) that the employer denied the her FMLA benefits to which she was entitled. *See Edgar*, 443 F.3d at 507. Here, the parties dispute only the fifth element. Specifically, the issue is whether Defendant unlawfully denied Plaintiff FMLA benefits to which she was entitled on October 22, 23, 28, 19, and November 2, 2011.

Defendant argues that, because Plaintiff failed to submit the recertification paperwork FMLASource by October 25, 2011, Plaintiff's intermittent FMLA leave expired on October 6, 2011. Thus, Defendant argues, Plaintiff was not entitled to FMLA benefits on October 22, 23, 28, 19, and November 2, 2011. However, Plaintiff claims that Defendant's notice of its request for recertification was insufficient, and for that reason Plaintiff was entitled to FMLA benefits through December 12, 2011, as FMLASource previously approved her for intermittent FMLA leave through that date (Dkt 29, Ex. E, Pg ID 362).

The FMLA allows an employer to require recertification from an employee taking FMLA leave "on a reasonable basis." 29 U.S.C. § 1213(e). According to 29 C.F.R. § 825.308, "an employer may request recertification no more than every 30 days." 29 C.FR. 825.308(a). And if the original certification indicates that the minimum duration of the medical condition is more than 30 days, "an employer

must wait until that minimum duration expires before requesting recertification." *Id*. § 824.308(b). However, an employer may request recertification in less than 30 days if the "[c]ircumstances described by the previous certification have changed significantly." *Id*. § 825.308(c)(2). For instance, if the duration or frequency of the absences increases beyond the estimate in the original certification, an employer may request recertification. *Id.*

Defendant generally requires recertification every six months (Dkt. 25, Ex. F). However, as 29 C.F.R. § 825.308(c)(2) permits, Defendant generally requires recertification more frequently "[i]f the circumstances described in the original medical certification have changed significantly or Human Resources receives information that casts doubt upon the continuing validity of the medical certification." *Id.* Defendant claims the recertification at issue in this case falls into the latter category. Plaintiff's original certification, corresponding to the leave period beginning July 1, 2011 and ending December 12, 2011, estimated that she would accumulate four "episodic incapacitations per month" (Dkt. 25, Ex. K). Yet, during the month of September, Plaintiff accumulated nine FMLA-protected absences (Dkt. 25, Ex. G, Sue Dep., p. 15; Dkt. 25, Ex. E, Cluff Dep., p. 48). For that reason, Defendant questioned the validity of Plaintiff's FMLA leave and FMLASource then generated an email to Plaintiff that required Plaintiff to submit recertification paperwork. There is no dispute in this case that Defendant had the *right* to require Plaintiff to recertify her FMLA leave. The dispute revolves around whether FMLASource gave Plaintiff proper notice of her need to recertify.

Specifically, the issue is whether Defendant (through FMLASource), by informing Plaintiff of the recertification requirement via email, gave Plaintiff proper notice of that requirement. "[R]egardless of the circumstances under which the FMLA permits an employer to demand medical verification that a particular absence is properly counted as part of an approved FMLA leave, it seems evident that the employer must . . . notify the employee of this requirement." *McClain v. Detroit Entertainment, L.L.C.*, 458 F.Supp.2d 427 (E.D. Mich. 2006). In fact, 29 C.F.R. § 825.305, which governs certification generally, makes clear that an employer must give notice of a requirement for certification each time certification is required. *See* 29 C.F.R. § 825.305(a). Whether an email is a sufficient *means* of notification is less clear however. Regarding means of notification, 29 C.F.R. § 825.305 provides that "notice [of a certification requirement] must be written notice whenever required by § 825.300(c)," and further that "[a]n employer's oral request to an employee to furnish any subsequent certification is sufficient." *Id.*

Section 825.300(c) discusses an employer's obligation to notify an FMLA-eligible employee of their rights and responsibilities. *Id.* § 825.300(c). This rights and responsibilities notice must include, among other things, "[a]ny requirements for the employee to furnish certification of a serious health condition." *Id.* § 825.300(c)(1)(ii). Additionally, it requires that "[i]f leave has already begun, the notice should be mailed to the employee's address of record." *Id.* § 825.300(c)(1). Plaintiff argues that § 825.300(c) applies to this case, and that because Plaintiff's intermittent leave began on July 1, 2011, Defendant's notice of its recertification

requirement should have been mailed to Plaintiff's address of record.  However, § 825.300(c) requires only that an employer provide this rights and responsibility notice to an employee each time it provides an eligibility notice to the employee.  *Id.* § 825.300(c)(1).  And an employer need only send an employee an eligibility notice "at the commencement of the first instance of leave for each FMLA-qualifying reason . . . ."  *Id.* § 825.300(b)(1).

Defendant argues that because § 825.300(c) does not apply to recertification requirements, and because 29 § CFR 825.305 states that oral notification is sufficient, an email was more than required under the regulations to provide adequate notice.  In support of this argument, Defendant cites *Graham v. BlueCross BlueShield of Tennessee, Inc.*, 521 Fed. App'x 419, 424 (6th Cir. 2013).  *Graham*, however, is distinguishable.  First, in *Graham*, the defendant's FMLA administrator mailed the plaintiff two letters requesting recertification (although the plaintiff denied receiving both letters) and the plaintiff admitted during her deposition that her supervisors notified her orally on "several occasions… regarding the need to submit additional medical certification."  *Id.* at 421.  Thus, there was no question in *Graham* that the plaintiff was aware of the need to recertify her FMLA leave.

In the present case, an important distinction must be made between oral notification and email notification – oral notification, a person-to-person communication, guarantees actual notice to the employee.  The transmitting of an email, in the absence of any proof that the email had been opened and actually

13

received, can only amount to proof of constructive notice. This distinction becomes particularly significant when an employee has expressed a preference for correspondence to be sent by postal mail, as opposed to email. Here, there is this genuine issue of material fact regarding whether Plaintiff made such a request. Plaintiff claims that she never authorized FMLASource to communicate with her via email only. Defendant claims Plaintiff authorized "email only" correspondence. Since this matter is before the Court on Defendant's motion for summary judgment, the Court is bound to accept Plaintiff's version of events.

Furthermore, the Sixth Circuit has recognized that an employer who finds an employee's certification to be "incomplete" has a duty to inform the employee of the deficiency and provide the employee a "reasonable opportunity" to cure it. *See Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005) (citing 29 C.F.R. § 825.305(d)); *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005) (citing 29 C.F.R. § 825.305(d)).

Plaintiff was working between October 7, 2011 and November 4, 2011, yet no representative of Defendant made any effort to speak with Plaintiff about the need to re-certify the basis of her FMLA leave request. Only after her several absences, which Plaintiff thought were FMLA protected, had accumulated to the point that termination was possible, did Defendant raise the issue with Plaintiff in person and cause her to become aware of the need to re-certify. Furthermore, when Plaintiff did submit the recertification paperwork from her doctor to FMLASource, her FMLA leave was *approved*. However, this approval was not made retroactive, and

Defendant finalized Plaintiff's termination. This case presents a somewhat unique set of facts, but under these circumstances there is clearly a genuine issue of material fact as to whether Defendant provided Plaintiff a "reasonable opportunity" to cure. This is particularly so, given that the Court must view in the light most favorable to Plaintiff her claim that, from the very beginning, she never received notice that she was required to re-certify. Considering the record as it currently stands, there remain genuine issues of material fact in this case, and Defendant's motion for summary judgment as to Plaintiff's FMLA interference claim is therefore denied.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Dkt. 23) is **DENIED**.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: October 15, 2014

Certificate of Service

I hereby certify that this Order was electronically submitted on October 15, 2014, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager